## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

_____

SHEIBA TAFAZZOLI          )
                               )
         Plaintiff,      )
    v.                           )     Case No.:
                               )
CHAIRMAN, KRISTINE L. SVINICKI,  )
NUCLEAR REGULATORY        )
COMMISSION                )
                               )
                               )
         Defendant,    )
_____)

## COMPLAINT

Comes now Plaintiff, Sheiba Tafazzoli, through undersigned counsel, and files the instant employment discrimination and retaliation complaint against Defendant, Chairman Kristine L. Svinicki, Nuclear Regulatory Commission ("Defendant" or "NRC"). This case is related to a pending United States District Court for the District of Maryland case *Tafazzoli v. Nuclear Regulatory Commission*, 8:19-cv-00321. The allegations in the instant complaint arise from the administratively exhausted claims in Agency Case File No. NRC 16-26 and NRC 18-05. These claims were administratively exhausted after the Agency issued its Final Agency Decision on or about April 29, 2019. Plaintiff files the instant complaint within 90 days of such decision pursuant to federal law. *See e.g.*, 29 CFR §1614.407.

Plaintiff is a deaf female former employee with NRC. Notwithstanding Plaintiff's disability, she is an exceptional engineer and was successful in all aspects of her work with the Commission. However, beginning around 2014, Plaintiff's supervisors and other employees

1

grew weary of having to accommodate Plaintiff and upset that Plaintiff had previously complained about discrimination.  Thereafter, Defendant initiated a plan to force Plaintiff to quit by, among other things, removing her reasonable accommodations and fabricating a "harassment complaint."   The end result was that Plaintiff was constructively discharged from her position.  Plaintiff brings her claims against the Agency pursuant to federal law, i.e.,  Title VII of the Civil Rights Act of 1964 and the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 *et seq.*

## THE PARTIES

1.  Sheiba Tafazzoli ("Plaintiff") is a resident of the State of California.

2.  Plaintiff is deaf.

3.  Plaintiff is disabled within the meaning of the Americans with Disabilities Act and the Rehabilitation Act.

4.  Plaintiff's disability severely limits one or more major life activities, e.g., hearing, working, speaking, communicating and others.

5.  Plaintiff's disability is such that Plaintiff can perform the functions of her disability with reasonable accommodations.

6.  Plaintiff is able to communicate through the use of transcription software, interpreters and other means.

7.  Plaintiff is female.

8.  Plaintiff is dark and tanned skin complexion (non-White).

9.  Chairman Svinicki is the Chairwoman of the Nuclear Regulatory Commission.

10. The Nuclear Regulatory Commission is an independent federal agency responsible for administration of laws and regulations related to nuclear power, materials, and waste.

11. The Nuclear Regulatory Commission employs over 500 (five hundred) employees.

12. The Nuclear Regulatory Commission is headquartered in Rockville, Maryland and has offices around the country.

13. At all times relevant to this complaint, Plaintiff was an employee of the Nuclear Regulatory Commission.

## JURISDICTION AND VENUE

14. At all times relevant to this complaint Plaintiff was employed by the NRC.

15. At all times relevant to this complaint, Plaintiff worked in NRC's Rockville, Maryland  office.

16. The employment actions that form the basis of this complaint substantially occurred in the State of Maryland.

17. The discriminatory and retaliatory employment actions that form the basis of this complaint substantially occurred in the State of Maryland.

18. The discriminatory and retaliatory employment decisions that form the basis of this complaint substantially occurred in the State of Maryland.

19. Venue is proper in this Court under Title VII of the Civil Rights Act of 1964, the Rehabilitation Act and 28 U.S.C. §1391.

20. This Court has subject matter over these claims pursuant to 28 U.S.C. §1331, 1332, 1343 and 2401(a).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

21. Plaintiff has exhausted her administrative remedies prior to filing this suit.

22. Plaintiff timely contacted an Agency EEO counselor and filed a formal complaint of discrimination and retaliation with the Equal Employment Opportunity Commission.

23. Plaintiff timely amended her discrimination and retaliation claims with the Agency.

24. Plaintiff participated in an Agency investigation regarding Plaintiff's claims.

25. More than 180 days have expired since Plaintiff last filed an Amendment to her EEOC charge.

26. More than 180 days have expired since Plaintiff filed a request for a hearing.

27. The Agency issued a Final Agency Decision on or about April 29, 2019.

28. Plaintiff's attorney received the Final Agency Decision on or about May 7, 2019.

29. Plaintiff received a Final Agency Decision with respect to Agency Case File No. 16-26 and NRC 18-05.

30. No appeal of that decision has been filed.

31. Less than 90 days have expired from the receipt of the Agency's Final Agency decision to the filing of this complaint.

32. This complaint is being filed as a matter of right.  See 29 CFR §1614.407

## FACTS

33. Plaintiff was hired by the Nuclear Regulatory Commissioner as a "General Engineer" in or around 2010.

34. Plaintiff performed excellently in her position.

35. However, despite Plaintiff's excellent performance and qualifications for the position, Plaintiff suffered discrimination due to her hearing disability.

36.  Plaintiff is one of approximately six employees in the entire NRC Agency that requires the use of an interpreter.  Plaintiff was the only deaf female engineer in NRC.

37. An interpreter is an individual assigned as a reasonable accommodation to employees with hearing disabilities.

38. The interpreter is responsible for assisting the employee with communication and taking directions from the employee to allow the employee to successfully perform the functions of her position notwithstanding the employee's hearing disability.

39. The fact that Plaintiff is deaf and required an interpreter and other special accommodations irked several of Plaintiff's coworkers and supervisors.

40. The discriminatory actions of Plaintiff's supervisors and coworkers led Plaintiff to seek redress by filing complaints alleging discrimination on the basis of disability, color, sex, and retaliation. Plaintiff and the Agency also engaged the EEOC process and litigation.

41. From around 2014 to 2017, Plaintiff was supervised by Patricia Silva, Chief Inspections and Operations Branch (IOB), Division of Spent Fuel Management , Office of Nuclear Material Safety and Safeguards (NMSS).

42. Ms. Silva is not disabled, is not deaf and is not the same color/complex as Plaintiff.

43. Almost immediately after Ms. Silva became Plaintiff's supervisor, it was clear that Ms. Silva had an issue with Plaintiff's disability and reliance upon reasonable accommodations, as well as Plaintiff's prior participation in an EEOC case.   Upon information or belief, the Agency previously disseminated (without authorization or approval) a prior settlement agreement or information about a settlement agreement (and/or prior protected activity) between Plaintiff and the Agency related to Plaintiff's previous Title VII and Rehabilitation Act and ADA claims. Ms. Silva and Ms. Silva's colleagues were aware that Plaintiff had previously engaged in the EEO process by making and filing charges with the Agency's EEO Office and the EEOC concerning discrimination and retaliation related to disability discrimination and other protected categories. Although those charges were eventually resolved, Plaintiff was viewed by Ms. Silva and her coworkers as a burden and a complainer by virtue of her prior protected activity.   Plaintiff was also a prevailing complainant in a November 2014 hearing involving Title VII and Rehabilitation Act claims against the Department of Transportation.   Upon that information and belief, Ms.

Silva and others at NRC were aware of Plaintiff's prior participation in an EEOC hearing and retaliated against her on that basis.

44. At all times relevant to this complaint, Ms. Silva was aware of Plaintiff's disability, sex and color.

45. Ms. Silva regarded Plaintiff as disabled.

46. Ms. Silva regularly communicated with Plaintiff through interpreters.

47. Ms. Silva believed that Plaintiff could not perform her job because of her disability.

48. Ms. Silva began manifesting her discriminatory belief that Plaintiff's disability precluded her from doing an effective job and her general discrimination towards Plaintiff when she began reassigning Plaintiff's work assignments to other employees and refused to assign Plaintiff duties commensurate with her position, or assigned Plaintiff other duties that were intended to demean Plaintiff.

49. Ms. Silva and others gave Plaintiff negative performance evaluations that did not reflect the actual quality of Plaintiff's work.  Contrary to the false performance evaluations, Plaintiff was exceeding the expectations of her position.  Prior to 2016, Plaintiff had 6 prior appraisals with a rating of "excellent."  Plaintiff's supervisors authored ratings without seeking or obtaining actual input regarding Plaintiff's performance.

50. Ms. Silva and her cohorts also routinely held meetings that Plaintiff, due to her position, should be participating in, where they intentionally did not invite interpreters - thus prohibiting Plaintiff's effective participation in the meeting.

51. Ms. Silva and others were aware that if they did not invite an interpreter to the meeting, Plaintiff would be effectively shutout.

52. This was Ms. Silva and her cohort's intent.

53. Plaintiff is an intelligent and outspoken employee, and Ms. Silva and others believed that Plaintiff's disability, outspokenness and reasonable accommodations were an unnecessary burden to the Agency.

54. Ms. Silva and others were aware that Plaintiff's interpreters were critical to her performance at the Agency.

55. Ms. Silva and others routinely discouraged interpreters from assisting Plaintiff by inhibiting Plaintiff's access to interpreters, or failing to escort interpreters through NRC's secure building.

56. Ms. Silva ratcheted up the discrimination by denying Plaintiff leave and denying Plaintiff training opportunities that she provided to other, similarly situated employees outside of Plaintiff's protected class.

57. Plaintiff also had her training requests denied by Michael C. Layton, within Plaintiff's supervisor chain.  Mr. Layton was aware of Plaintiff's disability and Plaintiff's protected activity.

58. Another tool that Ms. Silva used to discriminatorily marginalize Plaintiff at the Agency was the repeated threats of disciplinary action.

59. Ms. Silva threatened Plaintiff with discipline.

60. Ms. Silva threatened Plaintiff with disciplinary actions on more than one occasion under such circumstances where no such threat was justified.

61. Ms. Silva also followed through on these discriminatory threats.

62. On or around December 5, 2016, Ms. Silva and Ms. Silva's colleagues (e.g., Mark Lombard) proposed and issued Plaintiff a 14 day suspension.

63. At the same time that Ms. Silva was directly trying to discriminatorily marginalize Plaintiff at the Agency, Ms. Silva's colleagues took the same approach.

64. In other words, Ms. Silva's colleagues knew that Plaintiff was disabled, that Plaintiff believed that she was being discriminated against by Ms. Silva, and that Ms. Silva was acting in such a manner as to marginalize Plaintiff. The colleagues supported Ms. Silva and her plan.

65. For example, Ms. Silva's colleague, Mr. Lombard would schedule meetings without interpreters.

66. Another colleague, Bo Pham, would make jokes about the issues between Ms.  Silva and Plaintiff.

67. With respect to Plaintiff's reasonable accommodation requests, Ms. Silva's other colleagues got into the mix.

68. Without Ms. Silva's direct approval as Plaintiff's immediate supervisor, Plaintiff ran into repeated roadblocks with respect to Plaintiff's required reasonable accommodations.

69. Defendant Human Resources employees and other employees, on their own and at Ms. Silva's behest, refused to meet with Plaintiff or engage in the interactive process.

70. In March or April, 2017 (after multiple complaints by Plaintiff about discriminatory treatment from Ms. Silva, and formal EEO complaints (participation activity)) the Agency went so far as to change its procedures regarding requests for reasonable accommodations.  These actions were directed at Plaintiff and making it more difficult for Plaintiff to engage in the interactive process or obtain a reasonable accommodation.

71. The Agency terminated Plaintiff's previously approved work schedule (which had been proved as a reasonable accommodation) and refused to approve any other revised work schedule as a reasonable accommodation or engage in the interactive process regarding such schedule.

72. Other employees leaked the confidential details of Plaintiff's EEO complaints and confidential medical issues.

73. None of the other 8 deaf employees (all of whom were not under Ms. Silva's purview) experienced the same treatment as Plaintiff.

74. In September 2016, rather than fix the situation, the Agency temporarily reassigned Plaintiff to a different position.   However, the reassignment was short lived and the Agency reassigned Plaintiff back under Ms. Silva in 2017.

75. This was the one of the first acts in an eventual plan to remove Plaintiff from federal service.

76. When Plaintiff was transferred, her new supervisors were aware that she had complained about Ms. Silva and, specifically, that she had engaged in protected activity under Title VII and the Rehabilitation Act.

77. Upon information and belief, Ms. Silva and these new supervisors communicated about Plaintiff.

78. Ms. Silva and others began removing Plaintiff's previously approved accommodations.

79. Ms. Silva and others removed Plaintiff's Access to "CART" (a service that assists Plaintiff in various work assignments).

80. Ms. Silva and others removed Plaintiff's split work schedule and telework arrangement.

81. Ms. Silva and others changed Plaintiff's seating arrangements and those for her interpreters.

82. Ms. Silva and others refused to provide assistance with escorting interpreters.

83.  Further, Management refused to act on providing Plaintiff with a "personal qualified interpreter" or "note-taker."

84. Ms. Silva and others then ramped up the attempt to terminate Plaintiff by fabricating allegations that Plaintiff had "harassed" interpreters.

85. Plaintiff never "harassed" interpreters.

86. Plaintiff, for her part, simply required interpreters that adequately performed the functions of their position.

87. Relying upon bogus claims of "harassment" or "security threats" NRC required Plaintiff to be "escorted in the building at all times."

88. No other similarly situated employee was subject to these conditions.

89. When Plaintiff made a justifiable sexual harassment complaint, management ignored her complaint - contemplating that it would eventually remove her from service and thus any investigation of Plaintiff's complaints was unnecessary.

90. Management also refused to provide Plaintiff with her FY 2017 performance appraisal.

91. In September and October 2017, the Agency pulled the trigger on acting to remove Plaintiff.

92. Fabricating that one of Plaintiff's "joke" cubicle items was a security concern, Plaintiff was assaulted by Agency security personnel, forcibly removed from the Agency, was told that she could not return to work, would not be provided with any reasonable accommodation, had her physical access to the Agency revoked, Plaintiff's office space was removed and Plaintiff was barred from accessing Agency networks.

93. Plaintiff was faced with no other choice but to resign her position.

94. In September and October 2017, the working conditions for Plaintiff had become so unbearable that any reasonable person would have felt forced to resign.

95. Plaintiff subjectively and objectively was constructively discharged from her position.

96. As of October 2017, the Agency had created such an intolerable working environment for Plaintiff that Plaintiff's only option was to resign.

97. The Agency's actions were a harbinger of termination.

98. Plaintiff was constructively discharged because of (or motivated by) Plaintiff's disability, Plaintiff's sex and Plaintiff's color.

99. Plaintiff was constructively discharged because of Plaintiff's prior protected activity.

100.     Plaintiff was constructively discharged when the Agency refused to provide Plaintiff with

a reasonable accommodation.

101.     No reasonable employee, under the circumstances, would have continued to bear the

Agency's treatment.

**COUNT I – DISPARATE TREATMENT GENDER DISCRIMINATION IN VIOLATION OF TITLE VII 42 U.S.C.§2000(e),*et seq.***

102.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

Plaintiff has exhausted all administrative remedies with respect to Count I.

103.     Plaintiff is female.

104.     Plaintiff is a member of a protected class.

105.     At all times relevant to this complaint, Plaintiff has maintained satisfactory job

performance.

106.     Plaintiff suffered an adverse action in the form of: a proposed 14 day suspension; a 14

day suspension; reprimanding Plaintiff, making a material change to Plaintiff's

duties; eliminating benefits of Plaintiff's employment; threatening Plaintiff's

employment; threatening Plaintiff with disciplinary action; removing and/or hindering

Plaintiff's reasonable accommodations; physical battery and assault; banning Plaintiff

from the physical premises; suspending Plaintiff from all her duties and revoking

Plaintiff's network access; denying Plaintiff's requests to report sexual harassment

and stalking to appropriate personnel; and refused to provide Plaintiff with a Fiscal

Year 2017 rating.

107.     Defendant took adverse employment actions against Plaintiff because of Plaintiff's

gender.

108.   Defendant was motivated by Plaintiff's gender in taking the aforementioned adverse employment action.

109.   The aforementioned adverse employment actions give rise to an inference of discrimination.

110.   As a proximate result of Defendant's actions, Plaintiff suffered humiliation, fear, intimidation, ridicule, upset, economic losses and other emotional injuries and will suffer severe damages and injuries including but not limited to, humiliation, loss of self-esteem, hurt, fear, frustration, emotional distress inconvenience and damage to her professional reputation.

111.   As a proximate result of Defendant's actions, Plaintiff suffered damages in the form of lost wages, lost compensation, future lost earnings, economic losses, future loss of retirement benefits and other unliquidated damages.

112.   Plaintiff seeks an award of damages for back-wages, front-wages, lost benefits, pecuniary damages, non-pecuniary damages, compensatory damages, injunctive relief (including reinstatement and/or front wages), attorneys' fees and costs and all other available relief under the law.

**COUNT II – DISPARATE TREATMENT GENDER DISCRIMINATION (HOSTILE WORK ENVIRONMENT) IN VIOLATION OF TITLE VII 42 U.S.C.§2000(e),*et seq.***

113.   Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein. Plaintiff has exhausted all administrative remedies with respect to Count II.

114.   Plaintiff was subjected to sex discrimination by virtue of a hostile work environment. The hostile work environment was because of Plaintiff's sex.

156.   The hostile work environment was severe and/or pervasive.

158.   Plaintiff perceived the work environment as being hostile and/or abusive.

159.   The work environment was because of Plaintiff's sex.

160.   Defendant is responsible for the hostility of the work environment.

161.   As a proximate result of Defendant's actions, Plaintiff suffered humiliation, fear, intimidation, ridicule, upset, economic losses and other emotional injuries and will suffered severe damages and injuries including but not limited to, humiliation, loss of self-esteem, hurt, fear, frustration, emotional distress inconvenience and damage to his professional reputation.

162.   Defendant was motivated by Plaintiff's gender in creating the hostile work environment. Plaintiff seeks an award for back-wages, front-wages, lost benefits, pecuniary damages, non-pecuniary damages, compensatory damages, attorneys' fees and costs and all other available relief under the law.

163.   Plaintiff seeks an award of damages for back-wages, front-wages, lost benefits, pecuniary damages, non-pecuniary damages, compensatory damages, injunctive relief (including reinstatement and/or front wages), attorneys' fees and costs and all other available relief under the law.

## COUNT III – RETALIATION IN VIOLATION OF
## TITLE VII 42 U.S.C.§2000(e),et seq.

164.   Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein. Plaintiff has exhausted all administrative remedies with respect to Count III.

165.   Plaintiff engaged in protected activity.

166.   Plaintiff engaged in opposition and participation activity under Title VII.

167.   Plaintiff had a good faith belief that she was opposing activity prohibited by Title VII.

168.   Plaintiff had a reasonable belief that he was opposing activity prohibited by Title VII.

13

169.    Plaintiff engaged in protected participation activity under Title VII.

170.    Defendant was aware of Plaintiff's protected opposition and participation activity.

171.    Plaintiff has suffered adverse actions.

172.    Plaintiff has suffered adverse actions because of her protected activity in the form of: a proposed 14 day suspension; a 14 day suspension; reprimanding Plaintiff, making a material change to Plaintiff's duties; eliminating benefits of Plaintiff's employment; threatening Plaintiff's employment; threatening Plaintiff with disciplinary action; removing and/or hindering Plaintiff's reasonable accommodations;  physical battery and assault; banning Plaintiff from the physical premises; suspending Plaintiff from all her duties and revoking Plaintiff's network access; denying Plaintiff's requests to report sexual harassment and stalking to appropriate personnel; and refused to provide Plaintiff with a Fiscal Year 2017 rating. There is a causal connection between Plaintiff's protected activity and the adverse actions Plaintiff has suffered.

173.    As a proximate result of Defendant's retaliation, Plaintiff suffered humiliation, fear, intimidation, ridicule, upset, economic losses and other emotional injuries and will suffered severe damages and injuries including but not limited to, humiliation, loss of self-esteem, hurt, fear, frustration, emotional distress inconvenience and damage to her professional reputation.

174.    As a proximate result of Defendant's retaliation, Plaintiff suffered damages in the form of lost wages, lost compensation, future lost earnings, economic losses, future loss of retirement benefits.  Plaintiff seeks an award for back-wages, front-wages, lost benefits, pecuniary damages, non-pecuniary damages, compensatory damages,

14

injunctive relief (including reinstatement and/or front wages) attorneys' fees and costs and all other available relief under the law.

**COUNT IV – RETALIATORY HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII 42 U.S.C.§2000(e),*et seq.***

175.    Plaintiff incorporates by reference paragraphs all preceding paragraphs as if fully set forth herein. Plaintiff has exhausted all administrative remedies with respect to count IV.

176.    Plaintiff engaged in protected activity under Title VII.

177.    Plaintiff engaged in protected participation activity under Title VII.

178.    Plaintiff engaged in protected opposition activity under Title VII

179.    Plaintiff had a good faith belief that she was opposing activity prohibited by Title VII.

180.    Plaintiff had a reasonable belief that she was opposing activity prohibited by Title VII.

181.    The Agency was aware of Plaintiff's protected activity at the time the agency took the aforementioned adverse actions against Plaintiff.

182.    There is a causal connection between Plaintiff's protected activity and the adverse actions taken against Plaintiff.

183.    Defendant took the aforemtioned adverse actions against Plaintiff because of Plaintiff's protected activity.

184.     The hostile work environment was severe and/or pervasive.

185.    The hostile work environment culminated in Plaintiff's constructive discharge.

186.    The work environment was because of Plaintiff's prior protected activity.  Plaintiff

186.    perceived the work environment as being hostile and/or abusive.

187.    Defendant is responsible for the hostility of the work environment.

182     As a proximate result of Defendant's actions, Plaintiff suffered humiliation, fear, intimidation, ridicule, upset, economic losses and other emotional injuries and will suffer severe damages and injuries including but not limited to, humiliation, loss of self-esteem, hurt, fear, frustration, emotional distress inconvenience and damage to her professional reputation.

183.    Plaintiff seeks an award for back-wages, front-wages, lost benefits, pecuniary damages, non-pecuniary damages, compensatory damages, injunctive relief (including reinstatement and/or front wages) attorneys' fees and costs and all other available relief under the law.

## COUNT V – FAILURE TO ACCOMMODATE IN VIOLATION OF THE REHABILITATION ACT of 1973, 29 U.S.C. §§ 701 et seq.

184.    Plaintiff hereby incorporates each of the preceding paragraphs as if fully re-stated herein.  Plaintiff has administratively exhausted Plaintiff's Count V.

185.    Defendant failed to accommodate Plaintiff in violation of the Rehabilitation Act.

186.    Plaintiff has a disability.

187.    Defendant had notice of Plaintiff's disability.

188.    Defendant regarded Plaintiff as having a disability.

189.    Plaintiff could perform the essential functions of her job with a reasonable accommodation.

190.    Defendant refused to make such an accommodation.

191.    Defendant's actions were willful and malicious.

192.    Plaintiff administratively exhausted her remedies prior to filing this suit.

193.    Plaintiff has suffered and continues to suffer substantial pecuniary and non-pecuniary damages.

194.    Plaintiff has suffered severe stress, anxiety and depression and other mental and physical anguish as a result of Defendant's actions.

195.    For Count V, Plaintiff seeks Damages, including injunctive relief, or other civil relief as authorized by the Rehabilitation Act..

### COUNT VI– DISCRIMINATION (DISABILITY) IN VIOLATION OF THE REHABILITATION ACT of 1973, 29 U.S.C. §§ 701 et seq.

196.    Plaintiff hereby incorporates each of the preceding paragraphs as if fully re-stated herein.  Plaintiff has administratively exhausted Plaintiff's Count VI.

197.    Defendant discriminated against Plaintiff in violation of the Rehabilitation Act.

198.    Plaintiff has a disability.

199.    Plaintiff's disability severely limits one or more major life activities.

200.    Plaintiff was regarded as having a disability.

201.    Defendant had notice of Plaintiff's disability.

202.    Plaintiff could perform the essential functions of her job with a reasonable accommodation.

203.    Defendant refused to provide Plaintiff with reasonable accommodations.

204.    Defendants' actions were willful and malicious.   Plaintiff has suffered adverse actions because of her disability, her record of disability or being regarded as disabled:   in the form of: a proposed 14 day suspension; a 14 day suspension; reprimanding Plaintiff, making a material change to Plaintiff's duties; eliminating benefits of Plaintiff's employment; threatening Plaintiff's employment; threatening Plaintiff with disciplinary action;  removing and/or hindering Plaintiff's reasonable accommodations;  physical battery and assault; banning Plaintiff from the physical premises; suspending Plaintiff from all her duties and revoking Plaintiff's network

access; denying Plaintiff's requests to report sexual harassment and stalking to appropriate personnel; and refused to provide Plaintiff with a Fiscal Year 2017 rating.

205.   Plaintiff administratively exhausted her remedies prior to filing this suit.

206.   Plaintiff has suffered and continues to suffer substantial pecuniary and non-pecuniary damages.

207.   Plaintiff has suffered severe stress, anxiety and depression and other mental and physical anguish as a result of Defendant's actions.

208.   For count VI, Plaintiff seeks Damages, injunctive relief, or other civil relief as authorized by the Rehabilitation Act.

**COUNT VII – RETALIATION IN VIOLATION OF THE REHABILITATION ACT of 1973, 29 U.S.C. §§ 701 et seq.**

209.   Plaintiff hereby incorporates each of the preceding paragraphs as if fully re-stated herein.  Plaintiff has administratively exhausted Count VII.

210.   Defendant retaliated against Plaintiff based on her protected complaints about unlawful disability discrimination, failure to accommodate and requests for reasonable accommodation in violation of the Rehabilitation Act.

211.   Plaintiff engaged in protected activity by opposing discriminatory employment practices to Plaintiff's supervisors, Defendant's HR Department and made requests for reasonable accommodations.

212.   Plaintiff participated in protected activity when she filed engaged in protected participation activity, filed complaints with the Agency's EEO office, made

requests for reasonable accommodation, made complaints about disability discrimination and unlawful retaliation to other employees and engaged in other protected activity under the Rehabilitation Act.

213.   When Plaintiff voiced the aforementioned opposition to Defendants, Plaintiff had the reasonable belief that she was opposing unlawful discriminatory employment practices.

214.   Defendants and Defendant's agents were aware of Plaintiff's protected activity.

215.   Plaintiff has suffered adverse actions because of her protected activity.

216.   Plaintiff suffered adverse actions as a result of her protected activity in the form of: a proposed 14 day suspension; a 14 day suspension; reprimanding Plaintiff, making a material change to Plaintiff's duties; eliminating benefits of Plaintiff's employment; threatening Plaintiff's employment; threatening Plaintiff with disciplinary action;   removing and/or hindering Plaintiff's reasonable accommodations;  physical battery and assault; banning Plaintiff from the physical premises; suspending Plaintiff from all her duties and revoking Plaintiff's network access; denying Plaintiff's requests to report sexual harassment and stalking to appropriate personnel; and refused to provide Plaintiff with a Fiscal Year 2017 rating. There is a causal connection between Plaintiff's protected activity and adverse employment actions suffered by Plaintiff.

217.   As described more fully above, Defendant engaged in unlawful employment practices by retaliating against Plaintiff for opposing discriminatory employment practices in violation of 42 U.S.C. §2000e, *et seq* and the Rehabilitation Act.

218.   Plaintiff administratively exhausted her remedies prior to filing this suit.

219.    Defendant's actions were willful and malicious.

220.    Plaintiff has suffered and continues to suffer substantial pecuniary and non-pecuniary damages.

221.    Plaintiff has suffered severe stress, anxiety and depression and other mental and physical anguish as a result of Defendants actions.

222.    For Count VII, Plaintiff seeks Damages, injunctive relief (including reinstatement and/or front wages), or other civil relief as authorized by the Rehabilitation Act.

## COUNT VIII– DISPARATE TREATMENT COLOR DISCRIMINATION IN VIOLATION OF TITLE VII 42 U.S.C.§2000(e),*et seq.*

223.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein. Plaintiff has exhausted all administrative remedies with respect to Count VII.

224.    Plaintiff is dark skinned / dark complexion.

225.    Plaintiff is a member of a protected class.

226.    At all times relevant to this complaint, Plaintiff has maintained satisfactory job performance;

227.    Plaintiff suffered adverse actions in the form of: a proposed 14 day suspension; a 14 day suspension; reprimanding Plaintiff, making a material change to Plaintiff's duties; eliminating benefits of Plaintiff's employment; threatening Plaintiff's employment; threatening Plaintiff with disciplinary action;  removing and/or hindering Plaintiff's reasonable accommodations;  physical battery and assault; banning Plaintiff from the physical premises; suspending Plaintiff from all her duties and revoking Plaintiff's network access; denying Plaintiff's requests to report sexual harassment and stalking to appropriate personnel; and refused to provide Plaintiff with a Fiscal Year 2017 rating.

228.    Plaintiff suffered an adverse action in the form of constructive discharge.

229.    Defendant took adverse employment actions against Plaintiff because of Plaintiff's color.

230.    Defendant was motivated by Plaintiff's color in taking the aforementioned adverse employment action.

231.    The aforementioned adverse employment actions give rise to an inference of discrimination.

232.    As a proximate result of Defendant's actions, Plaintiff suffered humiliation, fear, intimidation, ridicule, upset, economic losses and other emotional injuries and will suffer severe damages and injuries including but not limited to, humiliation, loss of self-esteem, hurt, fear, frustration, emotional distress inconvenience and damage to her professional reputation.

233.    As a proximate result of Defendant's actions, Plaintiff suffered damages in the form of lost wages, lost compensation, future lost earnings, economic losses, future loss of retirement benefits and other unliquidated damages.

234.    Plaintiff seeks an award of damages for back-wages, front-wages, lost benefits, pecuniary damages, non-pecuniary damages, compensatory damages, injunctive relief (including reinstatement and/or front wages), attorneys' fees and costs and all other available relief under the law.

**COUNT IX – DISPARATE TREATMENT COLOR DISCRIMINATION (HOSTILE WORK ENVIRONMENT) IN VIOLATION OF TITLE VII 42 U.S.C.§2000(e),*et seq.***

235.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

Plaintiff has exhausted all administrative remedies with respect to Count IX

236.  Plaintiff was subjected to color discrimination by virtue of a hostile work environment.  The hostile work environment was because of Plaintiff's color.

238.  The hostile work environment was severe and/or pervasive.

239.  Plaintiff perceived the work environment as being hostile and/or abusive.

240.  The work environment was because of Plaintiff's color.

241.  Defendant is responsible for the hostility of the work environment.

242.  As a proximate result of Defendant's actions, Plaintiff suffered humiliation, fear, intimidation, ridicule, upset, economic losses and other emotional injuries and will suffered severe damages and injuries including but not limited to, humiliation, loss of self-esteem, hurt, fear, frustration, emotional distress inconvenience and damage to his professional reputation.

243.  Defendant was motivated by Plaintiff's color in creating the hostile work environment. Plaintiff seeks an award for back-wages, front-wages, lost benefits, pecuniary damages, non-pecuniary damages, compensatory damages, attorneys' fees and costs and all other available relief under the law.

244.  Plaintiff seeks an award of damages for back-wages, front-wages, lost benefits, pecuniary damages, non-pecuniary damages, compensatory damages, injunctive relief (including reinstatement and/or front wages), attorneys' fees and costs and all other available relief under the law.

**COUNT X – DISPARATE TREATMENT DISABILITY DISCRIMINATION (HOSTILE WORK ENVIRONMENT) THE REHABILITATION ACT of 1973, 29 U.S.C. §§ 701 et seq.**

245.  Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

Plaintiff has exhausted all administrative remedies with respect to Count X.

246.    Plaintiff was subjected to disability discrimination by virtue of a hostile work environment.  The hostile work environment was because of Plaintiff's disability.

247.    The hostile work environment was severe and/or pervasive.

248.    Plaintiff perceived the work environment as being hostile and/or abusive.

249.    The work environment was because of Plaintiff's disability.

250.    Defendant is responsible for the hostility of the work environment.

251.    As a proximate result of Defendant's actions, Plaintiff suffered humiliation, fear, intimidation, ridicule, upset, economic losses and other emotional injuries and will suffered severe damages and injuries including but not limited to, humiliation, loss of self-esteem, hurt, fear, frustration, emotional distress inconvenience and damage to his professional reputation.

252.    Defendant was motivated by Plaintiff's disability in creating the hostile work environment. Plaintiff seeks an award for back-wages, front-wages, lost benefits, pecuniary damages, non-pecuniary damages, compensatory damages, attorneys' fees and costs and all other available relief under the law.

253.    Plaintiff seeks an award of damages for back-wages, front-wages, lost benefits, pecuniary damages, non-pecuniary damages, compensatory damages, injunctive relief (including reinstatement and/or front wages), attorneys' fees and costs and all other available relief under the law.

## JURY TRIAL DEMAND

254.    Plaintiff demands a trial by jury on all counts.

Very respectfully,

***Daniel E. Kenney /s/***
Daniel E. Kenney, Esq.
Bar No. 18369
DK Associates, LLC
5425 Wisconsin Avenue, Suite 600
PMB #653
Chevy Chase, MD 20815
202-430-5966 Phone
dan@dkemployment.com